Richmond, P. J.,
after stating the facts, delivered the opinion of the court.
The principal contention of defendants’ counsel is that the indictment is insufficient in this: That the warrant alleged to have been forged and altered was void upon its face, and that forgery could not be predicted upon a void instrument; that special counsel, Belford and Yeaman, not being district attorneys or deputies, and not having been employed by the county commissioners of Arapahoe county, or any other county, but having been selected by the court as special counsel, were clearly without authority to appear before the grand jury, and in the prosecution of the defendants after presentment by indictment; that the court erred in admitting in evidence a large number of warrants of the city, some forged and others genuine. These are the three principal questions that were discussed before us in the oral argument.
The main and most important question, and the one with which we have had the greatest difficulty in reaching a conclusion, is the first. The testimony in the ease shows that George R. Raymond was deputy city auditor; that James P. Hadley was deputy city treasurer; that J. Jay Joslin & Son had a claim against the city for merchandise furnished to the extent of §3.50, which claim was duly presented to the Gity council and allowed, and thereafter a warrant ivas drawn for the sum of §3.50, but in said warrant the purpose for which the appropriation was made or the warrant drawn was not included in the warrant; that thereafter the defendants, Hadley, Raymond, and one Milburn, the then city clerk, altered the warrant by inserting the figures “ 30 ” and *334 the words “ three hundred ” in the said warrant, and subsequently drew the entire sum of $303.50 from the treasury of the city. It is insisted that the failure of the warrant to show on its face the purpose for which it was drawn renders it absolutely void, and consequently that no indictment for forgery can be predicated upon it.
I will divide this last proposition into two parts : First. Was the alleged warrant void upon its face ? Second. If void, was it a subject of forgery ?
Section 22, art. 3, of the city charter of Denver (Sess. Laws, 1885) provides as follows: “No money shall be paid out by the city treasurer for any purpose, except upon warrants drawn’ upon him by order of the city council and signed by the mayor, countersigned and registered by the auditor, and attested b}r the clerk; and every such warrant shall show on its face the date of its issue, the date of the order of the city council, to whom and for what purpose issued, and from what fund payable.” It will be observed that the warrant upon which the charge of forgery is predicated omits to state for what purpose it was issued; and, in order to determine the validity or invalidity of this warrant, it is necessary to determine whether the provisions of the statute above recited are mandatory; and, before proceeding to the discussion of this question, it may be well to theorize as to the object of the legislature in providing for a specific recital in the warrant of the purpose for which it was issued. This provision of the statute is as important as any of the other enumerated requisites of a warrant. If we can omit the purpose for which it is issued, why can we not omit the signature of the mayor, the date of the order of the city council, to whom payable, and from what fund payable ? The statute says it shall show on its face the purpose. The object of the legislature in providing for this insertion in the warrant, it occurs to me, was, among other things, that the treasurer might be advised of the fact that the claim for which the warrant was directed to be issued was one for which the moneys of the city could be legitimately appropriated. It must be con *335 ceded that, should a warrant be drawn enumerating on its face an illegitimate purpose, — one for which the city had no right to expend money or to appropriate money, — the treasurer would be wholly unwarranted in disbursing the funds of the city in payment thereof. The reports are full of cases where it has been held that appropriations were ultra vires, and that a city should be enjoined from such expenditures. I could recite innumerable instances where a city, a county and a school district have deemed it prudent and wise to aid in enterprises of a private nature, which might be conceded would be of public benefit, yet appropriations for such purposes have been held ultra vires. If the warrant upon its face had shown such an illegitimate purpose, can it be contended that a treasurer would be warranted in the payment of it ? If this be true, then the failure to specify the purpose is equally fatal. The lack of this information would justify the treasurer in refusing payment, and information that would bring to his mind that a warrant was for an illegitimate purpose would be equally a justification for the refusal of payment.
The basis of this discussion is fully supported by the cases which have passed on this and similar phases of the subject-matter of this inquiry.
In the case of Merkel v. Berks Co., 81 Pa. St. 505, it was held that the directors and inspectors of the poor and prison of Berks county had no right to draw 'orders on the county treasurer for donations for benevolent purposes. On the trial of the case, Woodward, P. J., rendered an opinion, in the course of which he said: “ Among other duties imposed on the county treasurer is that requiring him to disburse the moneys belonging to the prison, on orders drawn on him by the board of inspectors, necessary for the support of the poor. Moneys passing into his custody are such as shall be necessary for keeping, furnishing and maintaining the prison, and necessary for the support of the poor. To these purposes the public funds are destined. To provide for these purposes, the directors and inspectors are ’authorized to disburse the *336 funds by drawing orders which it is the duty of the treasurer to pay. Orders appropriating money to other purposes are illegal, and, if the treasurer has knowledge or means of knowledge of their illegality, it is his duty to refuse to pay them when they are presented. He is bound to know the extent and limit of the authority conferred upon him by the law under which he has accepted his office. In this case express notice was given him that the orders were drawn for none of the purposes specified in the acts of the assembly. Upon their face they were declared to be donations. The directors and inspectors had no more right to draw them, and the treasurer was no more justified in paying them, than if they had purported to be given to satisfy the gambling debt of a pauper, or to buy a prisoner a horse. * * * Municipal officers are held to strict accountability.” On the removal of the record to the supreme court of Penns3d.vania, it was held that “ the orders paid by the treasurer of the county were illegal on their face, and therefore brought home notice to him of the want of authority in the directors of the poor to order the payment.”
It seems to me that the supreme court of this state has practically settled this question in the case of Traveler's Ins. Co. v. Denver, 11 Colo. 435, wherein the identical section of the city charter was considered. There it is said that “ these requirements as to what the warrant shall state are mandatory, and a warrant which does not comply with ‘these requirements in its statements does not create any liability against the city, and is not evidence of a debt against it.” But it is claimed this is obiter dieta. I cannot agree with the contention in this particular. I think it was essential to the decision of that case, but nevertheless it is a declaration, and indicates a conclusion of the supreme- court of this state upon this question. It ma3r be said, with considerable force, that courts are not bound to follow the mere declarations in opinions not necessary to the decision; yet I am inclined to the opinion that, if it was but an expression and wholly unnecessary, it still is a correct legal conclusion; or, *337 as Justice Miller says, “ obiter dicta * * * are those obserrations thrown out by the court' in delivering its opinions which, though in themselves valuable as statements of principles, and often sound principles, are not involved in the case before them, and therefore are to be treated merely as the suggestion of the judge, and not as the decision of the court. Yery much of what is presented to the court as authority in the hearing of a case is of this character, and while it is not decisive, and does not carry the weight of a direct decision of the court in the case, it cannot be said to be wholly useless, when the observations proceed from a distinguished judge of high authority, and whose opinions are entitled to respect.” Art. Amer. Law Review, April, 1889.
“ The intention of the legislature should control absolutely the action of the judiciary. Where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to'the wisdom or justice of the particular enactment. The means of ascertaining that intention are to be found in the statute itself, taken as a whole and with all its parts; in statutes on the same subject; antecedent jurisprudence and legislation ; contemporaneous and more recent exposition; judicial construction and usage; and to the use of these means, and these alone, the judiciary is confined.” Sedg. on Constr. Stat. and Const. Law, 325. “ Mandatory statutes áre imperative. They must be strictly pursued. Otherwise the proceeding which is taken ostensibly by virtue thereof will be void. Compliance therewith, substantially, is a condition precedent; that is, the validity of acts done under a mandatory statute depends on a compliance with its requirements. When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which an act shall be done, the mode pointed out must be strictly pursued. It is the condition on which alone a party can entitle himself to the benefit of the statute that its directions shall be strictly complied with. Otherwise the steps taken will be void. * * * What *338 the law requires for the protection of the taxpayer, for example, is mandatory, and cannot be regarded as directory merely. * * * The special powers given to corporations, to courts, or officers must be exercised with strict, substantial adherence to all directions of the statute. * *' * A body corporate, created for a special purpose, with limited powers, being a creature of the statute, must conform in its action to the law of its creation, and acts done contrary to such regulations are simply void.” Sutherland on Stat. Construction, §§ 454, 455, 456. “ Where the thing to be done concerns and subserves rights both of the public and of individuals, in all these an intent is to be inferred that, in using a permissive phrase, the legislature really meant to enjoin an imperative duty.” Endlich on Interpretation of Statutes, sec. 312. The last recited rule is much stronger than one necessary to cover the case presented here. The language of the charter is not permissive. It says the warrant shall show on its face the purpose for which it is issued. It is not, .in any sense, a permissive phrase, and to embrace in the warrant its purpose certainly tends to subserve the public interest, and to protect the public funds in the custody and under the control of the city treasurer. When the object of the statutes are considered, and the general rules for the construction of such as concern the public and its affairs are followed, there is no escape from the conclusion that the statute is mandatory. This conclusion is abundantly sustained by an unbroken series of decisions, where the question has received attention.
Glidden v. Hopkins, 47 Ill. 525, was an action brought by Hopkins against Glidden and others, as directors of a school district, to recover upon a warrant. On the trial of the cause, plaintiff offered in evidence, to sustain the issue on his part, the original instrument, to the admission of which defendants objected, for the reason that the writing did not show on its-face for what purpose it was drawn or what indebtedness it was to pay. The court overruled the objections, and plaintiff obtained judgment. In deciding the case, Judge *339 Breese used the following language : “ Certain school funds collected from taxes levied by the order of directors, or from the sale of property belonging to any district, can be paid out on the order of the directors; and all moneys and school funds liable to distribution, not being principal, paid into the township treasury, or coming into the hands of the township treasury, can be paid out only on the order of the proper board of directors, signed by a majority of the board, or their president and clerk; and in all such orders the purpose for which, or on what account drawn, shall be stated, and a form is given in which they may be drawn. From the various provisions of this act, a studied design on the part of the legislature to protect the school fund, and guard it from all misapplication, is quite apparent. This provision, requiring orders to express on their face for what purpose drawn, must, in the light of this legislation, be regarded as mandatory, and the provision itself is so just, and so well calculated to protect the fund, that it cannot, and ought not, in any case to be dispensed with. The order offered in evidence was not an order authorized to be drawn, and consequently it furnishes no ground of action against the succeeding board of directors. * * * The board of school directors, though a corporation, are possessed of certain specially defined powers, and can exercise no others, except such as result by fair implication from the powers granted. * * * This order, tested by the statute, was void in its inception, and incapable of being made valid by the act of any succeeding board, or by the promise of any official to pay it.” In the case of District of Columbia v. Cornell, 130 U. S. 655, it was held that certificates of indebtedness issued by a municipal corporation have no validity unless issued for a purpose authorized by law. In the case of Bayerque v. City of San Francisco, 1 McAll. 175, the section under consideration reads as follows: “ Every warrant upon the treasury shall be signed by the comptroller, and countersigned by the mayor, and shall specify the appropriation under which it is issued, and the ■date of the ordinance making the same. It shall also state *340 from what fund and for what purpose the amount specified is to be paid ; also the appropriation under which it is issued and the date of the ordinance making the same.” The judge, in delivering the opinion, said: “ This cannot be regarded as a matter of form. It is a substantial requirement, and inserted to carry out the policy contemplated to be pursued for the protection of the public from the recklessness of city officers, and the collusion with them of third parties.” The warrant referred to failed to specify the appropriation under which it was issued, and the date of the ordinance, and it was held that it could not be recovered on as a warrant, even in the hands of the original holder; that they were not legally issued, nor was the treasurer authorized to pay them. “ The defendant is not a private trading corporation, but a public municipal one. In the distribution of its powers among its agents, the legislature has interposed a check upon the officer having the custody of the public money, by authorizing him to pay only such warrants as purport on their face to have been issued under some previous appropriation, and the date thereof must be given. None other could lawfully issue.”
In the case of Smeltzer v. White, 92 U. S. 390, it was held that where the statute required the treasurer to disburse some of the county money on warrants drawn and signed by the county judge, and sealed with the county seal, and •not otherwise, the treasurer could pay no orders or warrants unless they were so sealed, and that no warrant is a genuine county warrant which is unsealed by the county seal. Prescott v. Gonser, 34 Iowa, 178 ; Springer v. County of Clay, 35 Iowa, 243; State v. Smith, 89 Mo. 409. Reeve v. City of Oshkosh, 33 Wis. 477, was a case where . the charter of the city of Oshkosh provided that “ all orders drawn upon the treasurer shall specify the purpose for which they were drawn, and shall be payable generally out of any funds in the treasury belonging to the city, except the school fund. Held, that this provision is mandatory, andoio reco.very can be had on an order which does not specify the purpose for which it is drawn.” In the case of Martin v. San Francisco, *341 16 Cal. 285, it was held that where the warrants do not comply, in their form, with the requirements of the city charter, they would not constitute any authority to the treasurer to pay them, because they do not specify the appropriation under which they were issued or the date of the ordinance making the same. In the case of City of Leavenworth v. Rankin, 2 Kan. 357, this language is used: “ Municipal corporations are creations of the law, and possess no powers except such as are conferred by law. They act under prescribed rules, and must act in accordance with them. They cannot, in any sense, be said to act as natural persons. When they undertake to make contracts, they must observe the regulations prescribed in that behalf, else there will be no contract, and no subsequent act can cure the defect. Their power to contract must be delegated by law, while that of a natural person is inherent. * * * When the law prescribes a prerequisite to their ability to contract, the obligation to observe it cannot with impunity be disregarded. Nor will a subsequently attempted ratification cure the defect. Such a construction would render nugatory the most salutary safeguards, and, in effect, make municipal corporations omnipotent. They must contract, if at all, within the prescribed limits, and according to the prescribed forms. They take no powers by implication.” In the case of Turner v. City of San Francisco, 7 Cal. 463, it was held that “ a comptroller’s warrant, to be valid, must be in the form prescribed by the charter of the city.”
Municipal warrants are instruments drawn by the officers of a corporation upon its treasurer, directing him to pay a certain sum of money specified therein to the person named or bearer. They are vouchers; the necessary instruments for carrying on the machinery of municipal administration. 1 Dill. Mun. Corp. § 485. The power to issue such paper is usually conferred by charter or statute, and they must be drawn by the proper officer, and all conditions precedent must be strictly complied with. Trustees v. Cherry, 8 Ohio St. 565. When required by law to issue a warrant, such officer has *342 no discretion. His act is merely ministerial. Campbell v. Polk Co., 3 Iowa, 467. The foregoing authorities, it seems to me, satisfactorily establish the fact to be that the section of the charter under consideration is mandatory; that the purpose for which a warrant is issued must appear upon the face of the warrant. It is not necessary, in my judgment, that the section of the statute referred to should go beyond the emphatic language used, and say that, if it does not so appear, the warrant shall be void. In addition to the fact that the authorities establish the provision of the section as mandatory, I think they establish the fact to be that the warrant, omitting the recitation, is void; that it is void upon its face; that it had no tendency to defraud the city government ; and no one will contend that, had the office of city treasurer been carefully administered, such a warrant would have been received and paid.
Can it be urged that if the treasurer of the city of Denver, or his deputy, knowing the law, had been honest and faithful in the discharge of his duties, a warrant of the kind in question, failing to contain the matters and things specified by the statute, in order to make it a valid warrant and a voucher in his hands, could possibly have failed to detect the omission in this case ? It is equally true that any bona fide purchaser, who might, have purchased this warrant without any knowledge of the provisions of the charter, would not have been permitted in any court to recover upon it. It would not be evidence of a legal obligation, and no court, either at law or equity, would have been warranted in the face of the statute in giving judgment against the city upon such a warrant.
There are many decisions wherein municipal powers and warrants issued thereunder have received the consideration of courts, and where they have undoubtedly held that, when the inquiry concerns simply the form of the paper, and there has been a substantial observance of the statutory requirements, the warrants were valid; but none have ever gone to the extent of determining that, when the omission was of matters of substance, the warrant was of any validity. Statutes *343 which prescribe what a warrant shall contain are universally, and without known exception, held to be mandatory.
It being void, can the crime of forgery be predicated upon it ? The force of the cases which hold the statute to be mandatory, and that the warrant, lacking the statutory requirements, is void, and that forgery cannot be predicated upon such a warrant, is to be found in the application of the principle that there must be a legal tendency to deceive, in order that the crime of forgery may be laid. This legal tendency includes also the element of validity or legal sufficiency; without this, as the eases say, there can be no legal tendency to deceive. The legal invalidity, being apparent from an inspection of the document, is lacking the tendency to deceive or harm, and so the following cases hold. In the case of People v. Shall, 9 Cow. 778, it was held that an instrument void upon its face, and- not shown to be operative by averment, if genuine, is not the subject of forgery. And in the course of the opinion this language is used: “Void things are as no things. Was it ever heard of that the forgery of a nudum pactum — a thing which could not be declared on or enforced in any way — is yet indictable ? It is the forgery of a shadow.” Rex v. Richards, Crown Cases, 193 ; Rex v. Lyon, Ib. 255 ; Rex v. Burke, Ib. 497. In the case of People v. Heed, 1 Idaho, 531, it was held that, if the original instrument alleged to have been forged or counterfeited is void upon its face, an indictment for forgery will not lie for counterfeiting such an instrument. This was a case where the defendant was charged with forging a county, warrant for the sum of $175. “ A writing invalid on its face cannot be the subject of forgery, because it has no legal tendency to effect a fraud. If, therefore, a statute authorizes an instrument not known to the common law, and so prescribes its form as to render any other form null, forgery cannot be committed by making a false statutory one in a form not provided for by the statute, even though it is so like the genuine as to deceive most persons.” 2 Bish. Crim. Law, § 538: Rex v. Moffatt, Leach, 431; Rex v. Lyon, Ib. *344 597. In the case of Cunningham, v. People, 11 N. Y. (Supreme Court Rep.) 455, it was held that, “ If a statute authorizes an instrument not known to the common law, and so prescribes its form as to render any other form null, forgery cannot be committed by making an instrument in a form not provided by the statute, even though it is so like the genuine one as to be liable to deceive most persons.” In Roode v. State, 5 Neb. 174, it was announced that, “ if an instrument does not purport on the face of it to be good and valid for the purpose for which it was created, it cannot legally be the subject of forgery, if not genuine.” In Rembert v. State, 53 Ala. 467, it was held that “ an instrument which, on its face and in its frame, is illegal or necessarily innocuous from its character, is not the subject of forgery.” In Clarke v. State, 8 Ohio St. 630, the court said: “ An indictment for forgery must not only allege the false making or alteration of a writing specified in the statute, with intent to defraud some named person or body corporate, but it must also appear on the face of the indictment that the fabricated writing, either of itself or in connection with the extrinsic facts averred, is such that, if genuine, it would be valid in the law to prejudice the rights of the person or body corporate thus named.” Barnum v. State, 15 Ohio St. 717. In the case of People v. Tomlinson, 35 Cal. 503, it was held that “ the purpose of the statute against forgeries is to protect society against the fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, create some liability, or work some prejudice to another in his rights of person or property.”
I am unable to conceive how the warrant in question could possibly operate to the prejudice of the city, or of individuals, when we know that it was the duty of the city officers to recognize the omission of a statutory requisite necessary to make of the warrant in question a genuine warrant, and when we know, in addition to that, that persons dealing with corporations must be assumed to know the extent of its cor *345 porate powers, and take notice of any restriction in its charter. So, too, are the duties and powers of an officer of a corporation prescribed by statute, and all persons dealing with such officers must take notice of such limitations imposed upon their authority by such statute. Dill. Mun. Corp. § 381. No duty or liability was created against the city of Denver by this warrant, not even to the extent of $3.50. No action at law would lie upon it. No court of equity would enforce payment of it. No city treasurer would be obligated to recognize it, but, on the contrary, are positively inhibited from paying it. In the case of Waterman v. State, 67 Ill. 91, it was held that the writing forged must subject the party affected to legal liability, if genuine. It was urged in the argument that the defendants have not insisted or asserted that they were not guilty of obtaining illegitimately money from the city treasury. This may be admitted, yet this admission does not warrant us in sustaining a conviction for a crime which has not been committed; and as is said in State v. Corfield, 26 Pac. Rep. 498, where it was intimated by the state that the defendant could not be punished at all unless for forgery under this statute, the court said: “ That is wholly immaterial, so far as the question presented to this court is concerned. * * * We hardly think, however, that our statutes are so barren of- remedies as to furnish none in this case.” In a more recent case in California, the supreme court of that state has reiterated the rule that the false making of an instrument “ merely frivolous, or one which upon its face is clearly void, is not forgery, because from its character it would not have operated to defraud or been intended for that purpose.” People v. Bibby, 27 Pac. Rep. 781. The only case that I have been able to find which asserts the contrary doctrine is the case of People v. Eades, 68 Mo. 150, in which case the court took occasion to say that the case of People v. Wright, in 9 Wend. 193, is criticised, if not overruled, in the case of People v. Stearns, 21 Wend. 409. A careful reading of this last cited case will show the contrary to be true, for in the opinion in that case *346 the doctrine of 9 Wend, is reiterated, and the following language is used : “ A writing void on its face is a familiar instance of a paper in respect to which forgery cannot he predicated without the averment of some extrinsic circumstances showing that it may become pernicious.” Fadner v. People, 33 Hun, 240. A large number of cases are cited in support of the doctrine, and the court proceeds further to say: “ This is on the presumption that every man knows the law, and is able to appreciate the legal effect of, the instrument. Therefore it cannot, in legal contemplation, defraud any one.” The opinion quotes from Hammond on the Law of Forgery, as follows: “The settled common-law rule is that, how clear soever the fraudulent purpose, unless the writing is sufficient to accomplish that purpose, it is not forgery, since, with a single exception, actions only, and not evil intentions, are punishable by the English law, and actions only which actually do, or possibly ma}^ produce injustice.” , Rollins v. State, 22 Tex. App. 548; People v. Galloway, 17 Wend. 540 ; Howell v. State, 37 Tex. 591.
If the warrant in question had any validity, or was calculated to legally prejudice the corporation, then we should have no hesitancy in saying that forgery might be predicated upon it. But, having reached the conclusion that it is void upon its face and worthless for any purpose, we are reluctantly compelled to hold that it is not a subject of' forgery. There can be no legal tendency to harm by the alteration of a paper that has no legal efficacy or validity. It may be said an almost universal test is that, unless the warrant is valid, and suit could be brought on it, then forgery cannot be predicated upon it. The rule is that, “to constitute forgery, the forged instrument must be one which, if genuine, may injure another, and it must appear from the indictment charging the offense that such is its legal character, either from its recital or description of the instrument itself; or, if that does not show it to be so, then by the averment of matter aliunde which will show it to be of that character.” The indictment fails to comply with this rule. In the case *347 of People v. Harrison, 8 Barb. 562, the identical question here involved was discussed. The court in the opinion said : “ This certificate, if genuine, is clearly defective in form and substance, under the statute. It does not set forth that the grantor acknowledged the execution of the conveyance. The defect is fatal to the validity of the certificate. The statute is imperative that the officer shall indorse a certificate setting forth, among other things, that the execution of the conveyance was duly acknowledged by the grantor. Without this requisite, no record could be made, and at law no title would pass. The question arising is whether the crime of forgery can be predicated upon such a certificate. I think it cannot. The invalidity of the instrument is apparent upon its face, and, to be the subject of indictment, the certificate should be so far perfect in form and substance as to be valid, if genuine. It is not the falsity of the writing alone, but also its supposed fraudulent effect, which makes a forgery criminal. If the forged instrument is so obviously defective in its form as this is, the law will not presume that it can accomplish the fraud which is perhaps intended. The law presumes a competent knowledge to guard against any such effect, and that no person can be injured thereby in his rights or property. This certificate has doubtless been used to perpetrate a gross wrong upon the grantee named in the conveyance. He has been induced to accept the deed as valid, and to part with the purchase money for the land. It. has been used as a false token, by which money has been fraudulently obtained, but the defendant has not been convicted under the statute in relation to cheats. If he had been, the conviction would have been good as well as merited. If the forgery, however, is not such as the law condemns as criminal, it cannot be made so by the want of prudence or circumspection on the part of the person actually defrauded.”
Having determined that the provisions of the charter referred to are mandatory, and that the alleged warrant upon which the crime of forging and uttering is based is void, we still have to determine whether the provisions of the statute *348 are broad enough to cover the offense - as alleged in the indictment. Section 775, Gén. St. 1888, provides that “ every person who shall falsely make, alter, forge, or counterfeit * * * any auditor’s warrant for the payment of money at the treasury, county order * * * or any order or warrant or request for the payment of money, * * * with intent to damage or defraud any person or persons, body politic or corporate, * * * or shall utter, publish, pass, or attempt to pass, as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, forged or counterfeited, with intent to damage or defraud any person or persons, body politic or corporate, * * * every person so offending shall be deemed guilty of forgery. * * * ” The alleged warrant in question, being void upon its face, has, in my judgment, no greater legal efficacy than a piece of blank paper. It is not a warrant, and cannot be classified as such. It could not be passed, or attempted to be passed, as true and genuine, and is nothing more or less than a false token, if it can be declared that. In -the briefs, nor in the oral argument, was our attention called to the statute.
Relative to the power of the court to appoint assistant counsel, I am thoroughly satisfied- that the contention of counsel for plaintiffs in error is neither supported by the statute of the state, by authority, nor by sound reason. Every attorney admitted to practice in the state of Colorado is a sworn officer of the court. His- obligation, subscribed and sworn to at the time of receiving his certificate as an attorney, is quite as full and complete as that taken by the district attorney. It is true, when acting as special attorneys by direction or permission of the court, they give no bond for the faithful performance of the duties of district attorney; but yet their conduct is susceptible to review by the court appointiiig them, as well as by the supreme court, and, should it prove to be unbecoming an officer of the court, a penalty *349 as severe as that nominated in the bond of the district attorney can be inflicted by either court. They are liable to fines and imprisonment and to disbarment, and their action as special counsel is subjected to the immediate control of the court appointing them. The sections of the statute referred to in the argument apply only to the appointment of some one or more attorneys to act as district attorney, and not to the appointment of attorneys to assist in the preparation and prosecution of crimes. The record fails to disclose that the defendants were in any way prejudiced or injured by the appearance of special counsel before the grand jury. It is neither averred, nor was it claimed in argument, that they were so prejudiced or injured. It appears from the record that the district attorney signed and presented the indictment to the court, and it is fair to assume that, while he may not have been present at all times before the grand jury, and did not conduct the examination of witnesses there, yet he supervised and indorsed the action of special counsel appointed to assist him. In the case of Tull v. State, 99 Ind. 238, it is held that the court “ has inherited discretionary power to appoint attorneys to assist the prosecuting attorney in criminal causes, and to allow a compensation payable out of the county treasury, nor will its action be reviewed save in cases where a clear abuse of discretion appears.” This is a well-considered case, and, in my judgment, warrants the conclusion that I have reached upon this point. State v. Bartlett, 55 Me. 200 ; Jarnagin v. State, 10 Yerg. 529; Rounds v. State, 57 Wis. 45. It is true that this question has frequently been presented to the supreme courts of the various states, but I have failed to find one well-considered ease where the power of the court to appoint attorneys to assist the prosecuting attorney has been denied; especially when the record failed to show that the court had not abused the discretionary power vested in it to so appoint.
As to the third and fourth errors, I am clearly of the opinion that the court was warranted in admitting the testimony objected to as well as in admitting the various exhibits *350 offered by the people. In a case where the crime of forgery is involved, and upon the theory on which the case was tried in the court below, I do not think the defendants have a good ground of complaint, so far as the instructions are concerned. I deem it wholly unnecessary to further consider the errors assigned. Suffice it to say that my examination of the record and authorities lead me to the conclusion that no error, other than the first one above considered, occurred at the trial that would warrant a reversal of the judgment. I think the indictment was insufficient, and that the crime charged in the indictment was not proved. The record in this case discloses a remarkable combination among city officials to procure from the treasury of the city unlawfully large sums of money. A system was agreed upon, and it is evident was for a time successful. That a crime has been committed for which the defendants ought to be punished cannot be doubted. But the question for our consideration, and the one we are called upon to decide, is whether the crime of forgery or uttering a forged paper has been committed. The alleged warrant in question was not used for the purpose of obtaining the money, from the city treasury, but was used for the purpose of accounting for certain moneys that had been unlawfully abstracted by the city officials, and divided among themselves. The judgment of the court below should be reversed. But, inasmuch as the record discloses the facts to be that a crime has been committed by the defendants, they should not be discharged, but remanded to the custody of the sheriff to await the action of the authorities in the premises ; and it is so ordered.
Bissell, J., concurred.